UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cesar & Vanda Noya,<br>      Plaintiffs,<br>v.<br>Westbrooke Condominium Association, Inc., Multiventure Properties, Inc., and Barbara J. Lehman,<br>      Defendants. | Civil Action No. 09-CV-_____/___ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. PRELIMINARY STATEMENT**

1. This action arises as a result of the Defendants' various attempts to illegally impose a two-person occupancy limit on Plaintiffs Cesar and Vanda Noya and thereby oust Plaintiffs from their home because they had a baby boy in December of 2007.

2. This action also arises out of Defendant Barbara Lehman's personal attempts to invoke corporate authority to enforce purported "noise violations" in retaliation for on Plaintiffs exercise of their legal rights under the Fair Housing Act by not moving out and not otherwise capitulating to Defendants in their attempts to oust Cesar and Vanda Noya and their boy Enzo from their home.

3. This Complaint is filed under the Fair Housing Act, 42 U.S.C. § 3604, Minnesota's Human Rights Act, Minn. Stat. § 363A, to compensate Plaintiffs for Defendants' discrimination against Cesar and Vanda Noya's based on family status and

1

for reasonable attorney's fees and costs, as applicable, by reason of the Defendants' violations of the Fair Housing Act, 42 U.S.C. § 3604, Minnesota's Human Rights Act, Minn. Stat. § 363A.

4. Plaintiffs also assert various Minnesota Law claims including negligent misrepresentation and individual liability against Barbara Lehman.

## II. JURISDICTION

5. Jurisdiction is conferred on this Court by 42 U.S.C. § 3604, 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

## III. PARTIES

6. Plaintiffs Cesar and Vanda Noya are husband and wife who reside together with their two year-old son, Enzo, in the Westbrooke-Park Condominiums, 707 11th Avenue South, Unit 6, Hopkins, Minnesota 55343.

7. Defendant Westbrooke Condominium Association, Inc. (hereinafter "Westbrooke Association") is a Minnesota Corporation with a principal business address, according to the Minnesota Secretary of State, of 7400 Metro Boulevard #380, Edina, Minnesota, 55439.

8. Westbrooke Association is the organization that oversees the matters of common interest and management relating to the Westbrooke-Park Condominiums.

9. The Westbrooke Association is governed by an elected board of directors (hereinafter "Westbrooke Association Board").

10. Defendant Multiventure Properties, Inc. (hereinafter "Multiventure Properties") is a Minnesota Corporation with its principal business address at 7400 Metro

Boulevard #380, Edina, Minnesota, 55439.  At all times relevant, Multiventure Properties was the management company overseeing the Westbrooke-Park Condominiums, employed by the Westbrooke Association.

11.	Defendant Barbara J. Lehman (hereinafter "Barbara Lehman") is an individual residing at the Westbrooke-Park Condominiums, 707 11th Avenue South, Unit 2, Hopkins, Minnesota 55343.

12.	Barbara Lehman is a married woman.  The unit belonging to her and her husband unit is directly below Plaintiffs' unit.

13.	Barbara Lehman is the president of the Westbrooke Association Board.

## IV. FACTS

14.	On or about September 8, 2004, Cesar Noya purchased a one-bedroom condominium in the Westbrooke-Park Condominiums, 707 11th Avenue South, Unit 6, Hopkins, Minnesota 55343.

15.	After purchasing the condominium, Noya received a copy of the Association Handbook.

16.	The Association Handbook stated that "[o]ne bedroom homes with Westbrooke Park are limited to a maximum of two people."

17.	On or about Winter 2006, Noya expressed his interest in installing a laminate wood floor into his unit to Bob McDonald, who worked for the management company at the time—Gassen Companies.

18.	McDonald represented to Noya that there were no specific Association regulations regarding flooring.

3

19. McDonald also instructed Noya that Noya should professionally install the flooring with the manufacturer's recommended cushioning.

20. On or about Spring of 2006, Victor Rodriguez, a professional installer, installed Canyon Oak Laminate Flooring from Home Depot, with the manufacturer's recommending cushioning in compliance with the instructions from McDonald on behalf of Westbrooke Association.

21. On or about May 2006, after the floor instillation was complete, Terry Lehman approached Noya in his garage to remark that he could hear Noyas steps when Noya walked around in his unit.

22. Noya stated that he had installed the flooring with the manufacturer's recommended cushioning as McDonald had advised him to do.

23. Noya brought Lehman into his garage to show Lehman a piece of the remaining flooring and cushioning.

24. Lehman left Noya's garage clearly upset at Mr. Noya's response and upset that Noya had complied with McDonald's instructions.

25. On or about August 2006, Cesar Noya married Vanda Noya and she moved into his condominium unit with him.

26. On December 15, 2007, Mrs. Noya gave birth to a baby boy, named Enzo.

27. On or about February 20, 2008, the Noyas received a letter from Multiventure properties, the "Managing Agent for Westbrooke Park Condominiums," stating that "[i]t has come to [the Association's] attention that an 'Occupancy' violation has been noted regarding your home."

28. The noted occupancy violation is described as follows: "One bedrooms within Westbrooke Park are limited to a maximum of two people."

29. Upon information and belief, the birth of baby Enzo is what triggered the purported occupancy violation.

30. The letter explains the rationale behind enforcing the occupancy rule: "In efforts to preserve the appearance and architectural harmony of the community we ask that you take immediate measure to resolve the violation."

31. The letter further explains other rationale for enforcing the occupancy violation: "This helps all of us to protect the values of our property."

32. Applying the rationale to the Noyas' circumstances, the letter implies that the birth of baby Enzo does not preserve the appearance and architectural harmony of their community.

33. Applying the further rationale to the Noyas' circumstances, the letter implies that the birth of Baby Enzo does not protect the values of their property.

34. The letter states that if the Noyas cannot comply with this request within the next 30 days, they had the right of appeal to the community's elected Board of Directors.

35. To comply, Noya was faced with an awful choice: get rid of his baby or move out.

36. At this time, Noya did not know that the Westbrooke Association's two-person occupancy limit was improper and illegal.

37. On February 25, 2008, Noya contacted Multiventure Properties to inform it and the Westbrooke Association that his son was born on December 15, 2007, and, for this reason he requested twelve months to sell his property.

38. Noya also stated that he had contacted three Realtors and by the Spring, he would begin showing the property.

39. On March 14, 2008, Noya received a letter from Multiventure Properties on behalf of the Westbrooke Association stating that the Board had approved a "variance of the 'Occupancy' violation."

40. This letter states that the Noyas must be in compliance by February 25, 2009.

41. On or about October 10, 2008, the Noyas received a letter from Multiventure Properties acting as the agent for Westbrooke Association purporting to be a reminder that the Noyas' "variance of the 'Occupancy' violation" would last until February 25, 2009, after which they would have to be in compliance with the "Governing documents."

42. This letter also states that the penalties for violations of the Rules and Regulations at Westbrooke Park Condominiums are as follows:

    a.     First Offense:     Warning by way of letter.

    b.     Second Offense:     $50 assessed to the homeowner's/resident's account.

    c.     Third Offense:     $75 assessed to the homeowner's/resident's account.

    d.  Fourth Offense:  Mandatory appearance before the Board of Directors.  The written notice will inform the parties involved of the date of their appearance before the Board.  Failure to appear before the Board as required will result in an additional $100 fine, plus $5.00 per day until appearance of the homeowner/resident is made and the violation is corrected.

43. The letter also states that the board will use "legal processes" "to resolve infractions of these Rules and Regulations" and that "the delinquent owner will also be charged with the cost of collection, including any attorney fees."

44. The association handbook in place at the time states that a delinquency on any account totaling two times the current assessment will be legally pursued by placing a lien on the property, initiating foreclosure proceedings, and/or suing in court to obtain judgment for all monies owed.

45. Noya became very worried that he had no choice but to begin incurring fines and ultimately facing court action because he not able to sell his unit.

46. On January 12, 2009, Noya sent a letter to Multiventure Properties, agents for the Westbrooke Association, stating that he was making every effort to sell his condominium in a short sale and asked for an "extension of the deadline to vacate the property for another year."

47. Noya stated "[i]t is my wish to comply with the only-2-person policy in a one-bedroom condo but in this market condition I would need more time."

48. Noya also expressed his fears of the impending fees and their impact on him and his family: "I lost my insurance business a year ago, and for me it would be

7

impossible to afford to pay for two places at the same time for the above and for the rent of another apartment. We are only living on one low salary (mine) with which I am supporting my wife and my one year-old son."

49. On or about January 19, 2009, in response to his email extension request, Tamara Eden of Multiventure Properties responded "I'm so sorry, the board has declined your request for another extension and expects compliance by February 28, 2009."

50. Eden also stated that after this date, if the Noyas were not in compliance, the Association would begin assessing fines against them according to the fine schedule.

51. On or about February 2, 2009, the Noyas received a letter identical to the October 10, 2008 letter.

52. On or about February 4, 2009, Noya sent a letter to each board member by certified mail, return receipt requests, pleading with them to extend the deadline for the Noyas to vacate the property.

53. Noya's letter states that he was struggling to sell his home so to avoid noncompliance: "It is my wish and my wife's, to comply with the occupancy rule. . . . This is the reason why we have hired a professional realtor . . . . My property is listed for *short sale* with MLS number 3611989." (italics in original)

54. Noya's letter also expressed his fear that the violation was pushing him and his family toward financial ruin: "Until the property is sold, I cannot vacate it. My property would be forced unfairly into foreclosure due to my inability to keep paying for association fees/mortgage and for rent elsewhere at the same time. A foreclosure would

hurt my credit history for 10 years making it impossible for our family to apply for a loan to buy a house in the future and it would also force me into bankruptcy."

55. Finally, Noya expresses his utter despair: "I am asking for more time as a father who only wants to secure a roof for his family and who is committed to selling the property even at a loss to comply with the occupancy rule."

56. After receiving Noya's letter, not one of the Westbrooke Association Board members replied to his request for help.

57. On February 6, 2009, around 5:30 pm, Barbara Lehman came to the Noyas front door and complained about the noise caused by baby Enzo's steps.

58. This is the first time that she or her husband complained about noise since May of 2006, almost three years previous.

59. On this date, Barbara told Vanda Noya that she had to comply with the rules of the condominium and that they Noyas "had to leave."

60. This encounter startled Vanda Noya, made her very uncomfortable in her own home, causing her to shake.

61. From this day on, her baby's attempts to walk caused Vanda Noya to fear upsetting the Lehmans.

62. Barbara Lehman complained about the noise created by baby Enzo's attempts to walk on February 9, 2009 around 6:30, and on February 13, 2009 at 6:20, and on other occasions.

63. On February 10, 2009, the Noyas retained Christensen Law Office PLLC.

9

64. On February 26, 2009, counsel sent a letter to Defendants demanding that they cease their practice of penalizing and discriminating against Plaintiffs.

65. On or about March 13, 2009, in response to a letter from Plaintiff's counsel, Counsel for Westbrooke Association contacted Plaintiffs to state that the Association was undergoing a comprehensive review and revision of its Rules and Regulations, including those regarding occupancy limits.

66. On or about April 13, 2009, counsel for Westbrooke Association sent a letter to Plaintiffs' counsel alleging that Plaintiffs had installed a hardwood floor without a sound dampening underlayer or cushioning.

67. The Westbrooke Association also alleged that the noise suffered by the Lehmans "was so loud and disturbing" that the Lehmans "have had to leave their unit numerous times."

68. The only potential source for the purported "loud and disturbing" noise is baby Enzo attempting to walk.

69. On Saturday, August 1, 2009, Plaintiffs received a copy of the Association Handbook with an effective date of August 1, 2009.

70. The handbook states that "[t]he maximum permissible occupancy of any Condominium Unit shall be no more than 1 person per every 200 square feet of habitable floor area. For purposes of this Rule only, 'person' is defined as any individual who is at least one year of age."

71. There is no definition of the word "habitable" in the handbook.

72. As a direct and proximate result of Defendants' actions, Cesar and Vanda Noya have suffered stress, medical treatment, loss of enjoyment of their home, pain and suffering, anxiety, and embarrassment.

## V. LEGAL CLAIMS

### COUNT I
### INDIVIDUAL LIABILITY FOR BARBARA LEHMAN

73. The Noyas incorporate the previous paragraphs by reference.

74. Defendant Barbara Lehman has used the corporate form of Westbrooke Condominium Association and controlled it so that the Westbrook Association had no mind, will, or existence of its own.

75. Defendant Barbara Lehman has used the corporate form of Westbrooke Condominium Association and exercised it in such a manner as to commit fraud or an illegal act against Cesar and Vanda Noya.

76. The Noyas have been injured and suffered unjust loss from Barbara Lehman's control and wrong.

77. Therefore, under Minnesota law, Westbrooke Condominium Association's corporate form is disregarded as to Barbara Lehman and she is personally liable to Plaintiff for all of the damages and relief sought below.

### COUNT II
### DISCRIMINATION UNDER THE FAIR HOUSING ACT
### 42 U.S.C. § 3604

78. The Noyas incorporate the previous paragraphs by reference.

79. When selling or renting housing in the United States, it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services of facilities in connection therewith, because of familial status.  42 U.S.C. § 3604.

80. The Noyas' condominium unit is a "dwelling" under the Fair Housing Act. 42 U.S.C. § 3602(b).

81. The Westbrooke Association provides services and facilities in connection with the Noya's condominium Unit.  42 U.S.C. §§ 3602(b), 3604.

82. Multiventure Properties provides services and facilities in connection with the Noya's condominium unit.  42 U.S.C. §§ 3602(b), 3604.

83. The Noyas are a family, which is a protected class under the statute.  42 U.S.C. § 3602(c).

84. When the Noyas had a son, their boy Enzo, they became a family with a child and attained familial status.  42 U.S.C. § 3602(k).

85. The Westbrooke Association bylaws imposed an "occupancy limit" of two persons for the Noyas' unit.

86. The Westbrooke Association Board promulgated the bylaws that created the two-person occupancy limit for the Noyas' unit.

87. Multiventure Properties, as the management company acting on behalf of Westbrooke Association, provided the mechanism of enforcement for the Association's bylaws.

88. The occupancy limit worked to the detriment of the Noyas and not to the detriment of families without children.

89. A presumption of illegality is raised where a plaintiff in a protected class shows that a standard works to his detriment and not the detriment of a non-class member.

90. The Westbrooke Association's two-person occupancy limit was a prohibited discriminatory practice, discriminating against the Noyas on the basis of familial status in violation of the Fair Housing Act. 42 U.S.C. §§ 3602(f), 3604.

91. Multiventure Properties, as the management company acting on behalf of Westbrooke Association, provided the mechanism of enforcement for the prohibited discriminatory practice of placing a two-person occupancy limit on the Noyas.

92. Nothing in the Fair Housing Act "limits the applicability of any reasonable local, State or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling. . ." 42 U.S.C. § 3607(b)(1).

93. Under its authority to interpret the housing statute, the department of Housing and Urban Development has provided that 42 U.S.C. § 3607(b)(1), when applied to nongovernmental authorities, should be scrutinized carefully to determine whether it operates unreasonably to limit or exclude families with children.

94. There is nothing in the communications with the Noyas that established the two person "occupancy limit" as reasonably related to health, safety, or any other reasonable consideration of the condominium association.

95. As a result of the Westbrooke Association's discriminatory housing practice, the Noyas are entitled to relief in the form of actual damages, non-economic damages, injunctive relief, and reasonable attorneys fees and costs. 42 U.S.C. § 3613.

## COUNT III
## VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
## MINN. STAT. § 363A

96. The Noyas incorporate the previous paragraphs by reference.

97. When selling or renting real property in Minnesota, it is an unfair discriminatory practice for an owner, lessee, subleasee, assignee, or managing agent of, or other person having the right to sell, rent or lease any real property, or any agent of any of these to discriminate against any person or group of persons because of familial status in the terms, conditions or privileges of the sale, rental or lease of any real property or in the furnishing of facilities or services in connection therewith. Minn. Stat. § 363A.09. (collectively referred to as "Minnesota Human Rights Act.")

98. The Noyas' condominium unit is real property under the Minnesota Human Rights Act. Minn. Stat. § 363A.03, subd. 39.

99. The Westbrooke Association furnishes facilities and services in connection with the privileges the Noyas' condominium unit.

100. Multiventure Properties furnishes facilities and services in connection with the privileges the Noyas' condominium unit.

101. The Noyas are a family, which is a protected class under the Minnesota Human Rights Act. Minn. Stat. § 363A.09.

102. When the Noyas had a son, their boy Enzo, they became a family with a child and attained familial status. Minn. Stat. § 363A.03, subd. 18.

103. The Westbrooke Association bylaws imposed an "occupancy limit" of two persons for the Noyas' unit.

104. The Westbrooke Association Board of Directors promulgated the bylaws that created the two-person occupancy limit for the Noyas' unit.

105. Multiventure Properties, as the management company acting on behalf of Westbrooke Association, provided the mechanism of enforcement for the Association's bylaws.

106. The occupancy limit worked to the detriment of the Noyas and not to the detriment of families without children.

107. The Westbrooke Association's two-person occupancy limit was a prohibited discriminatory practice, discriminating against the Noyas on the basis of familial status in violation of the Minnesota Human Rights Act. Minn. Stat. § 363A.03, subds. 13, 48.

108. Multiventure Properties, as the management company acting on behalf of Westbrooke Association, provided the mechanism of enforcement for the prohibited discriminatory practice of placing a two-person occupancy limit on the Noyas.

109. The Minnesota Human Rights Act states that Minn. Stat. § 363A.09, prohibiting discrimination because of familial status shall not be construed to defeat the applicability of any local, state, or federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling unit. Minn. Stat. § 363A.21.

110.   There is nothing in the communications with the Noyas that established the two-person "occupancy limit" as reasonably related to health, safety, or any other reasonable consideration of the condominium association.

111.   As a result of the Westbrooke Association's discriminatory housing practice and Multiventure Properties aiding and abetting of the Association's discriminatory housing practice, the Noyas are entitled to relief in the form of compensatory damages in the amount of up to three times the actual damages sustained, damages for mental anguish and pain and suffering, and reasonable attorneys fees and costs.  Minn. Stat. § 363A.29, subd. 4.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

112.   The Noyas incorporate the previous paragraphs by reference.

113.   In attempting to enforce an two-person occupancy limit, Barbara Lehman, the Westbrooke Association, and Multiventure Properties knew of should have known that it was a discriminatory practice and, therefore, illegal.

114.   Barbara Lehman, the Westbrooke Association, and Multiventure Properties represented that, because of the birth of their son, the Noyas were in violation of the two-person occupancy limit and would need to sell their unit or face action by the board in the form of fines, legal fees, and potential foreclosure by the board.

115.   Barbara Lehman also represented that the noise created by the Noya's baby displeased her and told the Noyas that they needed to move out.

116. Defendants through or in relation to the Westbrooke Association did not exercise reasonable care or competence in communicating their ability to legally impose a two-person occupancy limit, which was information that was false or that they should have known was false, while guiding the Noyas in their relationships with the Westbrooke Association and their relationships with their dwelling

117. As a result of Defendants' misrepresentations, the Noyas have suffered embarrassment, humiliation, pain and suffering and are entitled to damages, costs, and appropriate equitable relief.

## COUNT V
## BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD

118. The Noyas incorporate the previous paragraphs by reference.

119. By representing the Westbrook Association—a corporation of which the Noyas were members—the Association, Multiventure Properties, and Barbara Lehman owed fiduciary duties toward the Noyas.

120. By attempting to impose an illegal two-person occupancy limit, the Westbrooke Association, Multiventure Properties, and Barbara Lehman breached their fiduciary duties toward the Noyas, including, but not limited to, the duty of good faith and fair dealing.

121. As a result of Defendants' violations of their fiduciary duties, Plaintiffs have been harmed and are entitled to damages, costs, and appropriate equitable relief.

## VI. PRAYER FOR RELIEF

**WHEREAS**, based on the foregoing, Cesar and Vanda Noya request that this Court:

1. Find that Barbara Lehman's actions allow Plaintiffs to pierce the corporate veil and hold Barbara Lehman personally liable for any and all damages suffered by Plaintiffs, below.

2. As a result of the violations of the Fair Housing Act, 42 U.S.C. § 3604, Defendants Barbara Lehman, the Westbrooke Association, and Multiventure Properties are liable to Cesar and Vanda Noya for:

   A. Actual damages in an amount to be determined at trial;

   B. Non-economic damages in an amount to be determined at trial;

   C. Injunctive relief in the form of an injunction preventing any and all Defendants from representing the existence of, imposing, or enforcing any occupancy limits that discriminate on the basis of familial status or against any other protected class under the Fair Housing Act including, but not limited to, a two-person occupancy limit or a one-person-per-every-200-square-feet-of-habitable-floor-area occupancy limit.

   D. Costs of this action, including reasonable attorney fees as provided under 42 U.S.C. 3613.

   E. Such other and further relief as this Court deems appropriate

3. As a result of the violations of the Minnesota Human Rights Act, Minn. Stat. § 363A, the Westbrooke Association, and Multiventure Properties are liable to Cesar and Vanda Noya for:

   A. Compensatory damages in the amount of up to three times the actual damages sustained to be determined at trial.

  B. Damages for mental anguish and pain and suffering to be determined at trial.

  C. Reasonable attorneys fees and costs.

  D. Such other and further relief as this Court deems appropriate

4. As a result of their negligent misrepresentation, Defendants Barbara Lehman, the Westbrooke Association, and Multiventure Properties are liable to Cesar and Vanda Noya for:

  A. Actual damages sustained to be determined at trial.

  B. Non-economic damages in an amount to be determined at trial;

  C. Such other and further relief as this Court deems appropriate

5. As a result of their breach of their fiduciary duty and constructive fraud toward Plaintiffs, Defendants Barbara Lehman, the Westbrooke Association, and Multiventure Properties are liable to Cesar and Vanda Noya for:

  A. Actual damages sustained to be determined at trial.

  B. Such other and further relief as this Court deems appropriate.

           **CHRISTENSEN LAW OFFICE PLLC**

Dated: August 6, 2009    By: /s/ Carl Christensen
           Carl Christensen (# 0350412)
           1422 West Lake Street, Suite 216
           Minneapolis, Minnesota 55408
           (612) 823-4016
           (612) 823-4777 fax
           carl@clawoffice.com
           Attorney for Plaintiff